# THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>CHARLES M. HILLEBOLD and ANGELA HILLEBOLD,<br><br>Defendants. | Case No. 2:22-cv-00631-JES-KCD<br><br>The Honorable John E. Steele |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER ON DISCOVERY MATTERS

### Question Presented

The Government is required to file a pleading that gives fair notice of a claim. Fair notice includes providing allegations of the claim for which the factual allegations supporting the claim are sufficient to make the claim plausible. Limited discovery may be used by the Plaintiff to determine "plausibility." Despite sufficient discovery of the facts by Plaintiff and Defendant's rigorous efforts to provide information, Defendant was not given fair notice of a claim. Discovery has now become Plaintiff's onerous and endless fishing expedition to find a claim. Should written and some deposition discovery be limited and suspended until the Government provides their claim?

**Did the Government give sufficient notice of its claim?**

Mr. and Mrs. Hillebold ("Mr. Hillebold") were not given sufficient notice of the Government's claim. Rule 11 states that filing a pleading is certifying to the court that

1

they formed a claim after an inquiry that a claim is warranted by existing law and the factual contentions have evidentiary support. This rule is to prevent frivolous lawsuits, waste of judicial resources, or use as a harassment tactic.[1] A proper pleading is also required to give fair notice of the legal and factual basis of the lawsuit to the Defendant.[2] This allows the Defendant to know why he is being sued and how to defend himself.[3]

Although the Government filed a complaint, it does not give sufficient notice of the legal and factual basis of the lawsuit. The Government filed a complaint on July 6, 2022, and broadly cited that the claim stemmed from the Internal Revenue Code Section 41 ("credit for increasing research activities") also known as the "R&D" credit and some facts.[4] On its face, the complaint seems to give notice of its claim and factual allegations that seem plausible enough to overcome the FED. R. CIV. P 12(b)(6) standard.

Often at first glance, the courts conclude that sufficient notice of the issue was provided in the complaints involving section 41 and 12(b)(6) motions are denied. However, the complaint must be read in the context of the complexity involving section. The intricacy of this section was noted by a Tax Court Judge who only deals with tax issues, who stated "the research tax credit is one of the most complicated

---

[1] FED. R. CIV. P 11(b).
[2] FED. R. CIV. P 8(a).
[3] *Id.*
[4] *See* attached pleading as Exhibit A.

provisions in the Code."[5]. Other courts have also recognized how claims for research credits tend to be fact intensive and complex and imposes a significant burden on both the court and responding party.[6] In this context, Plaintiffs will often broadly define their claim knowing they will likely overcome the Rule 12(b)(6) standard and hide the actual issue until they are compelled to disclose it.

Specific parts of the section give rise to a massive variety of uniquely different legal claims that have been litigated and tried.[7] Therefore, the identification of the entire section of the code would be tantamount to stating that the Government has a claim relating to every part in Section 41 and provides no real notice of the actual claim, nature of the claim, or factual basis for that claim. Therefore, the Government has not disclosed its claim and the Hillebolds have attempted to uncover the specific allegations through the discovery process.

---

[5] *Suder v. C.I.R.*, 2014 WL 4920724, at *30 (U.S.Tax Ct.,2014).
[6] *TBL Licensing LLC v. Commissioner of Internal Revenue*, 2022 WL 2679052, at *5 (U.S. Tax Ct., 2022).
[7] *See. TG Missouri Corp. v. Comm'r*, 133 T.C. No. 13 (U.S. Tax Ct. 2009) (After stipulating all of the facts, proceeded to trial on the issue of whether property capable of depreciation by someone other than the taxpayer is subject to the depreciation exclusion or properly includable as a qualified supply expense); *see also Moore v. Comm'r*, T.C. Memo. 2023-20 (After stipulating all of the facts and issues with respect to all but one employee, proceeded to trial on the issue of whether that single executive performed qualified services); *see also Populous Holdings, Inc. v. Comm'r*, Case No. 405-17 ECF No. 30 (U.S. Tax Ct. Dec. 9, 2019) (After stipulating all of the facts and issues except whether one of the eight statutory exclusions applied, proceeded to cross-motions for summary judgment regarding whether the taxpayer's otherwise qualified research was subject to the funded research exclusion).

**Was the discovery process effective in finding the Government's issue?**

The discovery process has been ineffective in uncovering the Government's legal claim, specifically the alleged errors, and has become a shield blocking Mr. Hillebold from uncovering the claim and a sword to exhaust and defeat him by attrition. Therefore, pursuant to Federal Rules of Civil Procedure Rule 26(c)(1), Mr.Hillebold moves for a protective order and hereby shows there is good cause to protect him from oppression and undue burden and expense.

I. <u>Mr. Hillebold has been fully engaged and responsive throughout discovery while the Government has used distractive and delayal tactics.</u>

Rule 33 governs interrogatories and states in part that the number is generally limited to 25 and the scope is to any nonprivileged matter that is relevant to any party's claim or defense and proportional to the case. The rule requires parties to consider among other things, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.[8] The rule reflects the basic component necessary to even begin engaging in full and proper discovery such as knowing the claims. The rule also characterizes resolution as "resolving the issues" which demonstrates the necessity of the basic knowledge of the issues.

---

[8] FED. R. CIV. P 33; FED. R. CIV. P 8.

In *U.S. v. Beatrice Foods Co.,* the Defendant argued that interrogatories were properly used to find out the Government's contentions and were necessary in preparing a defense, over the government's objections.[9] The court stated that the purpose of discovery was to narrow the issues for trial and that other courts have consistently held that interrogatories can be used to ask the opposing party to be more specific about his claim.[10] Therefore, the court concluded that the Defendant's purpose was appropriate and the interrogatories were proper.[11]

On the other hand, the Government sent Mr. Hillebold two sets of interrogatories which was answered diligently. The first request was sent on October 31, 2022, with questions numbered 1 through 9 but with several embedded subparts in the sentence. If the sentence were broken up into subparts, it would have consisted of more than 25 interrogatories. For example, interrogatory number 7 asks for identification of each employee, hours worked, and detailed description of all activities for each of 15 different projects in 2016. Interrogatory number 8 asked for each employee activity a breakdown of time performing activity, purpose of activity, information sought from activity and QREs associated with activity for each of 15 projects. Although the Government filed the lawsuit and has the ultimate burden of persuasion, interrogatory question 4 through 9 asked Mr. Hillebold to state in extreme specificity how he met the requirements in each part of §41 and in essence provide

---

[9] *Beatrice Foods Co. v. U.S.*, 420 U.S. 961 (1975).
[10] *Id.*
[11] *Id.*

enough information for the Government to find an issue. Also, it asked for the calculation method of the claimed credit and specifically wanted an explanation of the method.

Since the Government filed suit, they would have their own calculations that were used to determine the amount refunded in error. Therefore, this question did not help discover information that would be relevant to the claim because the Government never stated this was their claim nor could it have been relevant to discovering information about a defense since Mr. Hillebold could not have a defense when there is no claim.

Despite the nature of the questions, Mr. Hillebold responded to the first set of interrogatories with extensive detail which included over 110 pages of narrative. Thereafter, on January 27, 2023, The Government sent another set of interrogatories with 7 questions with numerous embedded subparts into sentences that exceeded the number of allowed interrogatories. Some of the second set of interrogatories ask for the same information provided in prior requests and are cumulative. The Government continues to assert that that they have not exceeded 25 interrogatories and are entitled to send more interrogatories. The following question from its interrogatory number 8 demonstrates the disingenuous nature of this assertion that it did not have subparts and exceeded 25 interrogatories.

8. For each individual identified in response to Interrogatory Seven, please state the specific activities that the individual performed that you contend constituted qualified services as defined in 26 U.S.C. § 41(d), including the date the activity was performed, the time the individual spent performing the activity, the business component related to the activity, the information the individual sought to discover by performing the qualified services, and the amount of QREs associated with the activity.

[12]

While propounding an additional set of interrogatories exceeding what is allowed under the rules, which were still diligently answered by Mr. Hillebold, in contrast the Government objected to Mr. Hillebold's interrogatories and refused to fully respond to them.

The second set of the Government's interrogatories were cumulative and asked for information that was already provided and in its possession. Upon the Government complaining that their interrogatory was not answered, Counsel for Mr. Hillebold explained exactly how Mr. Hillebold was responsive to their specific question. Then, the Government decided to change the meaning of their questions and asked Mr. Hillebold to supplement his discovery response to answer its "intended meaning" by providing more information. Counsel for Mr. Hillebold was open to this request and provided the additional information. Although, Mr. Hillebold continues to provide more and more information and documents to stay engaged in good faith discovery,

---

[12] *See* Attached Copy of the Government's interrogatories sent to Mr. Hillebold as Exhibit B.

his efforts have only been met by the Government's complaint that they were provided with too much information.

Also, Mr. Hillebold proactively tried to identify the specific allegations against him in discovery. In his interrogatories, he specifically asked question by question about each major part of §41 and whether that was the issue. The Government objected that the form of the question was improper and refused to fully answer them. It objected that "contention interrogatories are to be used to target claims defenses or identify and narrow scope of unclear claims, defenses, and contentions." This was the exact purpose of Mr. Hillebold's interrogatory. This blanket objection without specific thought is demonstrative of the general response of the Government in the discovery process.

Similarly, in Mr. Hillebold's interrogatory number 16, he asked the Government to identify the factual basis and supporting documents relied upon to determine that a tax refund was issued in error. The response comprised of tax returns and the Form 886-A. These forms did not provide the factual basis nor supporting documentary sources of the Government's claim or how the documents were relied on to form a claim.

The Government also stated that they should be able to supplement their answers and identify the claim only after getting the Plaintiff's discovery responses. They have had Mr. Hillebold's responses but never provided any supplementation or identified their claim. More importantly, there has already been significant discovery on the merits, and the Government should know their issue at this point.

These hurdles have only been increasing the litigation costs and burden with no benefit.[13] Engaging in the discovery with the Government thus far has only reinforced the reality that any intended benefit of discovery in no way outweighs the current cost of discovery.[14]

Defendant has taken the position in briefing to the Court and in communications on discovery issues that the *de novo* review doctrine allows the Government to use the discovery process to find an error or issue, which illustrates the common misunderstanding of the doctrine. The *de novo* review doctrine simply means the examination of evidence *at trial* will not be based on any prior findings or conclusions that have been made.[15] In other words, not being bound by a prior finding of the Government does not equate to the Government being excused from its

---

[13] *See*. FED. R. CIV. P 26(b)

[14] *Id*.

[15] The *de novo* doctrine is generally applied by Federal Courts to mean that the Court will not look to the administrative records in determining whether a taxpayer is entitled to a claimed deduction or credit, but rather, take a fresh look at the evidence at trial. *See Vallone v. Commissioner*, 88 T.C. 794, 806-816 (1987); *Jackson v. Commissioner*, 73 T.C. 394, 400 (1979); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974); *Human Engineering Institute v. Commissioner*, 61 T.C. 61, 66 (1973), appeal dismissed (6th Cir., Apr. 1, 1975). The rationale is that a trial Court is to determine the taxpayer's liability based on the merits of the case and should not generally be based on the quality of the previous record developed at the administrative level. *See Jackson,* at 400; *Greenberg's Express, Inc.,* at 328. This de novo standard of review, however, has no bearing on the ability of a taxpayer to discover potentially relevant information. *See Cook v. United States,* 46 Fed. Cl. 110, 120 (Fed. Cl. 2000) (stating that the Court believes the Service has a particular responsibility to ensure that files needed for litigation are preserved and timely made available… upon proper discovery request, to plaintiffs [taxpayer]). In fact, the Supreme Court of the United States has ruled on a taxpayer's claim for refund by relying on facts established at the administrative level. *See Lewis v. Reynolds,* 284 US 281 (1932) (discussing a letter, allowed into evidence, that was sent to taxpayer from the Commissioner's office discussing the reasoning behind the denial of taxpayer's claim for refund).

obligations to have, and identify, a factual basis for filing of the lawsuit and to identify such basis in discovery.

Legal requirements for the signing of a Complaint in federal court include the obligation to ensure the suit is not frivolous and has legitimate basis. It also does not excuse the Government from its legal requirements, nor does it endorse behaviors such as not stating a specific claim, blocking the taxpayer from accessing documents, and issuing cumulative and onerous discovery for the purpose of attrition and in some hope of finding a basis for a suit that was already filed. Plaintiff filed suit in July of 2022. Now after eight months, and over one hundred pages of narrative responses to interrogatories which have exceeded the limitation under the federal rules, after the production of thousands of pages of documents, which include the relevant work product, financial documents including W2 information, tax returns, employee listings and job responsibilities, Plaintiff has refused to produce or specifically identify any error in the R&D credit calculation. Instead, Plaintiff seeks discovery which is cumulative, onerous, and not tailored to lead to discovery of relevant evidence on the merits of whether Defendants are entitled to the R&D tax credits for 2016.

The bulk of Plaintiff's discovery, in addition to being cumulative and onerous, seems more directed to identifying minor discrepancies from the original computation to discovery responses. To date, Plaintiff has not identified any such discrepancies in discovery responses. However, Plaintiff fails to recognize that minor discrepancies, even if identified, are not likely to impact the final tax credit computation and does not equate to an error in tax refund. Defendants' R&D tax credit claim is based on

some estimation, as most R&D tax credit claims are.[16] I.R.C. §41 allows for estimations on a reasonable basis such as estimates on the time spent by employees on qualified research activities or in calculating the amount of the credit.[17] The IRS's own guidance recognizes the use of estimations, not only in direct reference to estimations, but in recognizing the accepted use of sampling. Sampling is the use of a smaller group of projects and projecting the results of the analysis along with some adjustments for potential error. The IRS has recognized the use of sampling methods. Additionally, both the Courts and the IRS have recognized that tax credits may be computed by reliance on differing methods of accounting. A taxpayer may use project-by-project accounting, cost center accounting, or a hybrid method.[18] This is understandable since the tax credit is for businesses who may not track time by project or the research and development time by employee especially when there could be hundreds or thousands of projects or employees.[19]

---

[16] *See* FED. R. CIV. P 26(b)
[17] *See Fudim v. Comm'r*, 67 T.C.M. (CCH) 3011, *12–*13 (1994) (accepting that qualified research occurred, and then estimating the time spent on that research based on "testimony and other evidence in the record"); *U.S. v. McFerrin*, 570 F.3d 672, 675 (C.A.5 (Tex.),2009) (stating that as long as McFerrin could show activities that were "qualified research," then the court should estimate the expenses associated with those activities).
[18] *See Bayer Corp. and Subsidiaries v. U.S.*, 2012 WL 4339554, at *3 (W.D.Pa.,2012) (stating that although the taxpayer did not account for research expenses by individual projects and used the "cost center" approach, nothing in in the IRC prohibited this approach); *Amazon.Com Inc. v. Commissioner of Internal Revenue*, 148 T.C. No. 8 (U.S.Tax Ct., 2017) (discusses how the income tax regulation requires the taxpayer to provide the costs that contribute to development activity on a reasonable basis and the taxpayer had used a cost centers accounting).
[19] *See* Audit Techniques Guide: Credit for Increasing Research Activities (i.e. Research Tax Credit) IRC § 41 Determining the Scope. Publication Date - June, 2005.

Therefore, the Government's failure to recognize that estimation necessitates some flexibility in computation and turning discovery into an onerous process of seeking every alleged discrepancy by propounding cumulative requests, has only led to more untailored discovery seeking a "gotcha" in discovery as opposed to simply determining if the taxpayers are entitled to an amount of refund paid, or if not, the correct amount.

Furthermore, Rule 34 allows a party to request any documents or electronically stored information in the responding party's possession, custody, or control that is within the scope and purpose of discovery. Mr. Hillebold requested production of documents supporting the alleged claim. The Government only provided two sets of documents which were his tax returns and the Form 886-A and nothing else. These documents did not help Mr. Hillebold identify the alleged error(s), if any, and only created more questions about the lack of production of documents that were relied upon and mentioned in the 886-A. Also, the Government's responses were riddled with numerous objections with an assertion of its right to supplement the answer with additional documents. Although the requests for production was sent on November 17, 2022, there has been no supplementation. Additionally, what the Government relied on to support their alleged claim would have been known at the time of filing. It would be non-sensical to have any supplementation past this point.

On the other hand, Mr. Hillebold fully and actively participated in discovery by producing all requested documents in his possession, custody, or control. In response to the Government's request for production, Mr. Hillebold produced thousands of

pages of project documents, including financial documents showing how the credit was calculated. The documents produced by the Government should have helped Mr. Hillebold identify the Government's claim. Unfortunately, the request for production failed to uncover the Government's alleged claim and has shown discovery to be an ineffective tool thus far.

Rule 33 governs depositions by oral examination and allows a party to request a deposition to inquire into matters that are nonprivileged and that is relevant to any party's claim or defense and proportional to the needs of the case. Mr. Hillebold attempted to engage in earnest discovery to understand the alleged claim by speaking directly with the IRS agent who authored the 886-A.

Although the Government pointed to the form 886-A as a document and information relied upon to form the basis of the lawsuit, the Government refused to allow Mr. Hillebold to depose the agent to find the basis of the lawsuit and locate any other documents that the agent relied upon in producing the 886-A.

On the other hand, The Government wants to take the deposition of a third-party statistician on sampling methods when Plaintiff has refused any *sampling of projects* in the instant litigation and Mr. Hillebold has agreed to limit his claims for research credit to the 15 projects identified in interrogatory responses. The Government also wants to depose the corporate representative of a third-party company that acquired the assets of Mr. Hillebold's company years after the tax year at issue. Plaintiff has been informed that the asset agreement specifically reserves all rights to the R&D tax credits for 2016 and were not transferred to the third party. The

13

topics Plaintiff wanted to discuss with the corporate representative of this separate entity included among many subjects, the third party corporate structure, history, their formation, and this company's relationship to another separate entity that provided consulting services to Mr. Hillebold for the tax credit at issue. These events have shown the futility of the discovery process thus far in identifying the Government's alleged claim and use of the discovery tactics to create undue burden, delays, and blockade to finding the alleged issue.

This shows the unfortunate reality that some taxpayers face against the Government. They are forced into litigation and subjected to a war of attrition as the Government tries to find an issue. The Government's tactics slowly depletes the taxpayers of their time, money, and energy, until it becomes financially difficult or unsound to continue the fight and they are deprived of the opportunity to litigate the case on its merits. The taxpayer's only remedy is often to turn to the court to protect them from these tactics.

On February 23, 2023, the Government sent their second set of interrogatories and 53 requests for admission. Several of the requests for admissions asked for employee wages in 2016. This was after Mr. Hillebold responded to the Government's request for production on December 30, 2022, producing the W-2 information for all employees which contain the same information. Therefore, the information sought in the request for admissions almost two months later were already provided.

Thereafter, the Government admitted to not having reviewed the W-2s, then asked Mr. Hillebold to help it find the information despite the information being in its

possession for months. Mr. Hillebold then asked to have a stipulation of the wages of employees based on the W-2 information to avoid cumulative responses and to streamline the information for trial, but the Government refused. Despite already having provided the information and many of the requests for admissions being redundant, Plaintiff refused to stipulate to the W2 employee wage information and demanded Mr. Hillebold answer all 53 requests. This unequivocal refusal to stipulating to the information based on the W-2 information was conveyed without even having looked at them.

In all, Mr. Hillebold cooperated with the Government and provided complete discovery responses to the best of his ability, in contrast to the ways the Government continuously refused to state their claim and created roadblocks to finding an alleged claim. This highlighted the ineffectiveness of discovery in achieving its intended purpose. It is apparent that without knowing the alleged claim, it is impossible to engage in effective, tailored, and useful discovery. Therefore, the Government should be ordered to state their specific issue and written discovery should be suspended until the Government complies with the Court's order. Furthermore, the Government should not be allowed to continue their onerous fishing expedition and take the deposition of a third party statistician until an error or issue has been stated nor take the deposition of the corporate representative of a third party that acquired Mr. Hillebold's company many years after he claimed the credit at issue in this caseWHEREFORE, Mr. Hillebold respectfully request that the Court grant his motion and enter an order pursuant to Federal Rules of Civil Procedure Rule 26(c)(1).:

- requiring the Government to state the specific alleged errors and support;

- staying further written and deposition discovery until Plaintiff complies;

- restricting issuance of additional interrogatories which have already exceeded 25 when including subparts;

- order that no deposition of a statistician be taken until an alleged error is identified and relevancy of deposition is established;

- order that no deposition take place of the corporate representative of the third-party company that acquired the assets of Mr. Hillebold's company (HCM Systems, Inc.), over five years after he claimed the tax credits at issue, and has no relationship or interest in the credit;

- and for such other and further relief as this Court deems just and proper.

Dated:   March 7, 2023                    Respectfully submitted,

/s/ *Jefferson H. Read*
JEFFERSON H. READ
Texas State Bar No. 24025605
Helen M. Kim
Texas State Bar No. 24105671
ZERBE, MILLER, FINGERET, FRANK & JADAV, P.C
3900 Post Oak Blvd., Suite 1700
Houston, TX 77056
Telephone: 713-350-3529
Facsimile: 713-350-3607
jread@ZMFLaw.com
Hkim@ZMFLaw.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that on 7th day of March 2023, I filed the Motion for Protection and Memorandum in support with the Court through the Court's CM/ECF system. All parties were served via notice through the Court's CM/ECF system.

*/s/Jefferson H. Read*
Jefferson H. Read
